# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| LYUDMILA ARTEMENKO,<br><br>　　　　Petitioner,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>　　　　Respondent, | Case No.: 1:16-cv-00331-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Petitioner Lyudmila Artemenko's Petition for Review (Docket No. 1), seeking review of the Social Security Administration's decision denying her application for Social Security Disability Insurance benefits and Supplemental Security Income benefits. *See generally* Pet. for Review (Docket No. 1). This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. ADMINISTRATIVE PROCEEDINGS

On November 28, 2012, Petitioner Lyudmila Artemenko ("Petitioner") filed an application for Title II disability insurance benefits and Title XVI supplemental security income, alleging disability beginning October 15, 2009 (later amended to June 13, 2011). Both claims were denied on April 3, 2013 and, again, on reconsideration on June 5, 2013. On June 24, 2013, Petitioner timely filed a Request for Hearing. On June 11, 2014, Administrative Law Judge Louis Catanese, Jr. held a hearing in Boise, Idaho, at which time Petitioner, represented by attorney Taylor Mossman, appeared and testified. Impartial vocational expert, Polly Peterson, also appeared and testified.

**MEMORANDUM DECISION AND ORDER - 1**

On September 15, 2014, the ALJ issued a Decision denying Petitioner's claim, finding that she was not disabled within the meaning of the Social Security Act. Petitioner timely requested a review from the Appeals Council and, on May 31, 2016, the Appeals Council denied Petitioner's Request for Review, making final the ALJ's decision.

Having exhausted her administrative remedies, Petitioner timely filed the instant action, arguing that "[t]he decision denying Petitioner's claim is not in accordance with the purpose and intent of the Social Security Act, nor is it in accordance with the law, nor is it in accordance with the evidence, but contrary thereto and to the facts and against the evidence, in that Petitioner is disabled from performing substantial gainful activity." Pet. for Review, p. 2 (Docket No. 1). In particular, Petitioner argues that (1) "[t]he ALJ erroneously rejected the opinions of treating physicians and consultative examiner John Casper, M.D."; (2) "[i]n finding that the Petitioner had the residual functional capacity to perform light work, the ALJ erred"; (3) "[t]he ALJ erred by not properly considering whether [Petitioner's] conditions meet or equal the Medical-Vocational Guidelines under Appendix 2 to Subpart P of Part 404"; and (4) "[t]he ALJ erroneously rejected the credibility of [Petitioner] by not providing clear and convincing reasons for doing so." Pet.'s Mem. ISO Pet. for Review, p. 8 (Docket No. 18). Petitioner therefore requests that the Court either reverse the ALJ's decision and find that she is entitled to disability benefits or, alternatively, remand the case for further proceedings and award attorneys' fees. *See id*. at p. 20; *see also* Pet. for Review/Compl., p. 2 (Docket No. 1).

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. *See* 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. *See* 42

**MEMORANDUM DECISION AND ORDER - 2**

U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance (*see Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

As to questions of fact, the Court's role is to review the record as a whole to determine whether it contains evidence allowing a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts within the medical testimony (*see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)), resolving any ambiguities (*see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)), and drawing inferences logically flowing from the evidence contained in the record (*see Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). Where the evidence is susceptible to more than one rational interpretation, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *See Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

As to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *See Matney*, 981 F.2d at 1019. At the same time, the ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that

**MEMORANDUM DECISION AND ORDER - 3**

is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *See Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III. DISCUSSION

#### A. Sequential Process

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. *See* 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. *See* 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of her age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner "has not engaged in substantial gainful activity since June 13, 2011, the alleged onset date." (AR 14).

The second step requires a determination of whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. *See* 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of

**MEMORANDUM DECISION AND ORDER - 4**

impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. *See* 20 C.F.R. §§ 404.1521, 416.921. If there is no severe medically determinable impairment or combination of impairments, benefits are denied. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). The ALJ found that Petitioner has the following severe impairments: "obesity, hypertension, meralgia paresthetica, degenerative disc disease of the cervical and lumbar spine, dermatitis of the hands, and a history of migraine headaches." (AR 14).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *See id*. Here, the ALJ concluded that Petitioner's above-listed impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments. *See* (AR 16).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. *See* 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the

job and be engaged in substantial gainful activity. *See* 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. On this point, the ALJ concluded:

> After careful consideration of the entire record, I find the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is limited to frequently handling and fingering. She is not able to climb ladders, ropes or scaffolds. The claimant can balance on an unlimited basis. She can frequently stoop and climb stairs or ramps. She can occasionally kneel, crouch and crawl.

(AR 16).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). Here, the ALJ found that Petitioner is capable of performing past relevant work as a teacher's aide/office manager (as well as other jobs) because such work does not require the performance of work-related activities precluded by Petitioner's RFC. *See* (AR 22-23). Therefore, the ALJ concluded that Petitioner "has not been under a disability, as defined by the Social Security Act, from June 13, 2011, through the date of this decision." (AR 23).

**B.    Analysis**

    1.    Petitioner's Physician's Conflicting Opinions[1]

Petitioner claims that the ALJ improperly considered the medical evidence – specifically, the various treating and examining physicians' opinions speaking to her functional limitations. *See* Pet.'s Brief, p. 6 (Docket No. 18) ("The ALJ erroneously rejected the opinions of treating

---

[1] Although the regulations governing the evaluation of medical evidence were recently amended, the version effective March 27, 2017 does not apply to the present claim. *See* 20 CFR §§ 404.1527, 404.1520c.

**MEMORANDUM DECISION AND ORDER - 6**

physicians and consultative examiner John Casper, M.D."). The ALJ is responsible for resolving ambiguities and conflicts in the medical testimony. *See Magallanes*, 881 F.2d at 750. The ALJ must provide clear and convincing reasons for rejecting the uncontradicted medical opinion of a treating or examining physician, or specific and legitimate reasons for rejecting contradicted opinions, so long as they are supported by substantial evidence. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). Additionally, the ALJ may discount physicians' opinions based on internal inconsistencies, inconsistencies between their opinions and other evidence in the record, or other factors the ALJ deems material to resolving ambiguities. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).

Here, Petitioner argues that the ALJ did not give the appropriate level of deference to the opinions of Eric Hall, D.O, James Whiteside, M.D., and John Casper, M.D. *See* Pet.'s Brief, pp. 8-13 (Docket No. 18).

      a.    Dr. Hall

Dr. Hall, a treating physician since May 2013, opined in a June 2, 2014 "Medical Opinion" that, "[b]ecause of her severe left hip pain, [Petitioner] is not capable of any job requiring lifting" and that "she also would have difficulty sitting for long periods of time (more than one hour at a time)." (AR 596). Dr. Hall additionally opined that Petitioner is not capable of engaging in any type of work on a full-time basis and would be absent from work 4-5 times per month because of her "left hip pain/meralgia paresthetica." *Id*. Petitioner complains that the ALJ erred in giving these opinions only "little weight." *See* Pet.'s Brief, p. 10 (Docket No. 18). The Court disagrees.

**MEMORANDUM DECISION AND ORDER - 7**

To begin, Dr. Hall's opinions are not uncontradicted. *See, e.g.*, (AR 76-80, 104-107) (state agency reviewing medical consultants, Ward Dickey, M.D., and Myung Song, D.O., separately opine that Petitioner can perform range of light work); (AR 339) (examining physician, Dr. Casper, concluding that Petitioner is capable of occasionally lifting 30 pounds, frequently lifting 24 pounds, and continuously lifting 12 pounds). Therefore, the ALJ needs only specific and legitimate reasons for challenging these opinions. *See Moore v. Comm'r of Soc. Sec. Admin.*, 279 F.3d 920, 924 (9th Cir. 2002) ("The ALJ could reject the opinions of Moore's examining physicians, contradicted by a nonexamining physician, only for 'specific and legitimate reasons that are supported by substantial evidence in the record.'") (quoting *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). The ALJ met this standard.

First, Dr. Hall's opinions are premised exclusively upon Petitioner's hip pain. *See* (AR 596) (identifying Petitioner's diagnoses as "left hip pain/meralgia paresthetica"). But as the ALJ noted, the medical record indicates that Petitioner did not seek regular medical care for such pain until she purportedly had a slow speed car accident in April 2013 – almost two years *after* her alleged disability onset date and approximately five months *after* applying for disability benefits in November 2012. *See* (AR 21); *see also* (AR 574) (September 5, 2013 treatment note: "Patient presents for evaluation of swelling of the left thigh down to and around the left knee. *The patient has had ongoing left-sided sciatica she states has been present since a motor vehicle accident in April of this year*.") (emphasis added).[2]

---

[2] Petitioner states in response: "However, the ALJ fails to consider that together with Dr. Whiteside's and Dr. Casper's opinions, the objective medical findings are not limited to Petitioner's left hip pain." Pet.'s Brief, p. 10 (Docket No. 18). While this may be true in the broader context, Dr. Hall's opinions referenced *only* Petitioner's left hip pain. *See supra*. The fact that other medical providers may have commented on Petitioner's other impairments misses the point when analyzing the ALJ's handling of Dr. Hall's opinions. Because Dr. Hall's opinions are premised upon Petitioner's left hip pain, a specific critique in that regard is not inappropriate.

**MEMORANDUM DECISION AND ORDER - 8**

Second, the extreme limitations contained within Dr. Hall's June 2, 2014 Medical Opinion (e.g., Petitioner's inability to engage in any type of work activity on a full-time basis and being absent from work 4-5 times per month) are not reflected in Dr. Hall's own longitudinal treatment records. *See* (AR 21) (ALJ stating: "[T]he limited objective medical findings which document her hip pain do not support restrictions more significant than the light residual functional capacity established in this decision. While she has complained of pain to her treatment providers, the course of treatment she has received does not justify a finding that she is completely unable to work full-time or that she is expected to have an absenteeism rate of four to five times a month."). Instead, in the treatment notes leading up to his Medical Opinion, Dr. Hall variously noted the following:

- July 3, 2013: "Patient appears to be in mild to moderate pain." (AR 580).

- August 5, 2013: "Patient is awake, alert, and oriented. She appears in no acute distress. Examination of the low back reveals no evidence of gross deformity, minimal tenderness to palpation. She has a negative straight leg test bilaterally. Patient is able to ambulate without difficulty. Normal flexion and extension of the knee. Normal function of the ankle and foot." (AR 577).

- September 5, 2013: "Patient is awake, alert, and oriented. She is pleasant during the exam but tearful at times. She is obviously frustrated. . . . . Examination of the left thigh, left knee, left lower leg reveals only mild swelling around the distal ankle. No calf erythema, negative Homans sign. Normal peripheral pulses." (AR 575).

- September 18, 2013: Ultrasound of Petitioner's leg "did not show evidence of any blood clot." (AR571).

- October 3, 2013: "Patient is awake, alert, and oriented. She is pleasant during the examination. She is in no acute distress. . . . . Normal range of motion of the hip and knee joints. Minimal tenderness of the lumbar spine. Negative straight leg testing. Normal sensation to the distal leg and foot. No significant swelling of the lower leg or ankle is noted on today's exam." (AR 568).

- March 26, 2014: "I believe that her side pain or flank pain was most likely secondary to her urinary tract infection, but expect improvement with treatment and antibiotics." (AR 558).

**MEMORANDUM DECISION AND ORDER - 9**

Simply put, the information contained in these records are more-or-less unremarkable; they neither describe nor foretell the limitations that Dr. Hall ultimately opines.[3] An ALJ need not give controlling weight to a treating doctor's opinion when the opinion as to disability is inconsistent with his own treatment notes. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (holding that discrepancy between treating doctor's opinion and his treatment notes was "clear and convincing" reason to discredit opinion).

### b. Dr. Whiteside

Dr. Whiteside, another treating physician since December 2013, opined in a June 24, 2014 "Medical Assessment of Ability to Do Work-Related Activities (Physical)" that Petitioner "has chronic daily migraine headaches, as well as left hip pain that reduce her ability to perform work." (AR 612); *see also* (AR 609) ("The patient has hip pain (left) that makes walking difficult."). The ALJ also gave these opinions "little weight," concluding:

> Dr. Whiteside's opinion was rather vague, with no specific limitations identified. He merely related that she has chronic daily migraines as well as left hip pain which reduce her ability to perform work. Dr. Whiteside did not identify any specific objective medical evidence to account for these impairments nor did he address how it impacted her ability to work specifically.

(AR 21) (internal citations omitted). Petitioner argues that the ALJ's effective disregard of Dr. Whiteside's opinions was erroneous. *See* Pet.'s Brief, pp. 11-12 (Docket No. 18). Again, the Court disagrees.

The Petitioner suffers from migraines and left hip pain. The ALJ indicated as much when concluding that both impairments are severe and impact Petitioner's RFC. *See* (AR 14-21). In this sense, the ALJ's decision tracks the opinions of Dr. Whiteside. But as the ALJ pointed out,

---

[3] Petitioner focuses on the fact that "[t]he record reflects numerous visits with Dr. Hall." Pet.'s Reply Brief, p. 6 (Docket No. 23) (citing same July 2013, August 2013, September 2013, and March 2014 treatment notes). Though true, such records do not align with Dr. Hall's June 2, 2014 Medical Opinion. *See supra*.

**MEMORANDUM DECISION AND ORDER - 10**

Dr. Whiteside makes no effort to discuss *how* these impairments impact Petitioner, indicating simply "N/A" to the following questions/requests for information:

- "In your medical opinion, how many hours can your patient regularly work in a day?"

- "Please estimate, on the average, how many days per month your patient is likely to be absent from work as a result of medial impairments or treatment:"

- "Is sitting affected by the impairment?"

- "How many hours in an 8-hour work day can the individual sit, total?"

- "How long can the individual sit without interruption?"

- "Are lifting/carrying affected by the impairment?"

- "How many pounds can your patient carry occasionally?"

- "How many pounds can he/she carry frequently?"

- "How often can the individual perform [(climbing, balancing, stooping, crouching, kneeling, crawling)]?"

- "How often can the individual perform [(reaching, handling, feeling, pushing/pulling, seeing, hearing, speaking)]?"

- "Does the impairment cause environmental restrictions?"

- "Has your treatment been sufficient to form a basis for your assessment?"

- "Is your patient a malingerer?"

(AR 609-612). In other words, Dr. Whiteside never took the additional step to connect (if there was a connection to be made) Petitioner's understood impairments and her corresponding work-related limitations against which the ALJ's assessment of Petitioner's RFC could be measured.[4]

---

[4] Even a fully-completed Assessment, without more, would likely not have been enough. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (ALJ may "permissibly reject . . . check-off reports that [do] not contain any explanation of the bases of their conclusions"); *see also Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996).

**MEMORANDUM DECISION AND ORDER - 11**

In this setting, Dr. Whiteside's opinions serve only to confirm Petitioner's history of migraines and left hip pain; nothing in the ALJ's decision conflicts with this opinion.

Petitioner contends, however, that notwithstanding the Assessment, "there are still numerous records from Petitioner's appointments with Dr. Whiteside that the ALJ failed to review, wherein Dr. Whiteside discussed Petitioner's limitations." Pet.'s Brief, p. 11 (Docket No. 18) ("The ALJ's decision to give little weight to the Medical Source Statement without reviewing more of Dr. Whiteside's findings was made in error since Dr. Whiteside was one of Petitioner's treating physicians and his chart notes include documentation to support his opinions.").[5] In this respect, Petitioner highlights a record from May 14, 2014. *See id.* Notably, Dr. Whiteside did *not* complete this record; Ali Brooks, M.A. did. Regardless, it largely consists of Petitioner's own self-reported subjective complaints of pain (that she then conflates with Dr. Whitehead's opinions), rather than any objective clinical finding. *See* (AR 597) ("The patient presents with a one-year history of pain in the left buttock and leg. . . . . She states that both the pain and numbness came on after a car accident.").

And, as to the objective clinical findings themselves, Ms. Brooks noted that Petitioner experienced muscular tenderness in the neck and left hip pain when ambulating, ultimately assessing Petitioner with meralgia paresthetica and hip pain. *See* (AR 598). The other cited records (completed by both Ms. Brooks and Dr. Whiteside) similarly establish only the existence of Petitioner's hip pain and migraine history – not their limiting effects to any useful degree. *See* (AR 600-08). At bottom, the contours of Dr. Whitehead's opinions extend only as far as

---

[5] The Court disagrees with Petitioner's claim that, within these records, Dr. Whiteside "documents in detail the problems that the Petitioner would have with prolonged ambulation, as is required with light level work." Pet.'s Brief, p. 11 (Docket No. 18). As with Dr. Whitehead's Assessment, the Court views such treatment notes as vague and without a description of specific limitations. *See infra.* As a result, they fall short of an informed opinion and carry only limited utility.

**MEMORANDUM DECISION AND ORDER - 12**

recognizing certain of Petitioner's impairments (left hip pain and migraines) which the ALJ has likewise incorporated into Petitioner's RFC determination. There is no obvious and incongruous strain between the two; the ALJ's consideration of Dr. Whitehead's opinions is supported by clear and convincing and/or specific and legitimate reasons.[6]

### c. Dr. Casper

On March 28, 2013, Dr. Casper examined Petitioner to assess eligibility for disability benefits. *See* (AR 336-39). He diagnosed Petitioner with morbid obesity, atypical chest pain, hypertension, hepatitis, migraine headaches, and hand dermatitis. *See* (AR 339). He reported that Petitioner had normal gait, intact muscle strength, intact sensory exam, and no cognitive abnormalities. *See* (AR 338). Dr. Casper ultimately opined that Petitioner had "[n]o specific limitations . . . beyond what would ordinarily be considered appropriate for a morbidly obese woman of age 52 years," which he said would include:

> [S]tanding or walking 30 minutes continuously and 4 hours combined. Lifting of 30, 204, and 12 pounds on an occasional, frequent, and continuous basis, respectively. Carrying of 24, 18, and 12 pounds on an occasional, frequent, and continuous basis, respectively. No more than occasional fingering feeling or gripping due to hand dermatitis.
>
> No limitations expected for sitting, travelling, hearing, speaking, reasoning, or making occupational adjustments.

(AR 339).

The ALJ gave Dr. Casper's opinions only "some weight," observing that, in two instances, they were "not consistent with findings from his own examination." (AR 20). In particular, the ALJ claimed that, first, because Petitioner "displayed a normal gait with fully

---

[6] Because Dr. Whiteside's opinions are generally vague and do not speak to Petitioner's specific limitations (*see supra*), it is difficult to say whether they are contradicted by other medical providers or not so as to provide the template against which to test the ALJ's challenge to Dr. Whiteside's opinions. Even so, the Court finds that the ALJ at least offered clear and convincing reasons for giving Dr. Whiteside's opinions "little weight."

**MEMORANDUM DECISION AND ORDER - 13**

intact neurological findings" during the examination, she was not limited to standing and walking for only 30 minutes and four hours combined;[7] and, second, because Petitioner "had fully normal fine and gross dexterous movements" at the time of the examination, she was not limited to only occasional handling, fingering, and feeling. *See id*. (citing (AR 338-39)).[8] Petitioner concedes the findings made during the examination but disputes their application toward challenging Dr. Casper's opinions. Here, the Court agrees.

Discrepancies between a doctor's clinical notes and his opinions can represent "clear and convincing reason[s] for not relying on the doctor's opinion." *Bayliss*, 427 F.3d at 1216. But to say that a patient's "normal gait with fully intact neurological findings" necessarily corresponds to an ability to walk and/or stand for *more* than four hours in an 8-hour workday (as would be the case if the ALJ is to be believed) goes too far. A normal gait describes one's ability to walk, while fully intact neurological systems address the ability to feel sensation in one's legs; without more, they do not (and cannot) address *how long* one can walk. Therefore, to rely on the mere fact of these findings to support a conclusion that Petitioner is then capable of standing and walking for more four hours does not follow. *See, e.g.*, *Pierce v. Astrue*, 382 Fed. Appx. 618, 620 (9th Cir. 2010) ("Moreover, Dr. Patel's finding that Pierce had a normal gait and full range of motion in her knees simply demonstrates that she could do *some* walking and standing; it in no way indicates that she could walk or stand for extended periods, let alone more than two hours in an eight-hour workday.") (emphasis in original); *Ware v. Berryhill*, 2018 WL 3437078, at *3

---

[7] "Light work," requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday; "sedentary work" requires standing or walking, off and on, for a total of approximately two hours in an 8-hour workday. *See* SSR 83-10. The ALJ concluded that Petitioner had the ability to perform light work. (AR 16).

[8] At the June 11, 2014 hearing, the impartial vocational expert, Polly Peterson, testified that a limitation involving only occasional fingering and gripping (as Dr. Casper opined) would preclude all jobs available to Petitioner, including her past relevant work. *See* (AR 67).

**MEMORANDUM DECISION AND ORDER - 14**

(N.D. Iowa 2018) ("The ALJ does not explain how he found inconsistencies between claimant's normal gait, station, and balance and Dr. Farrell's opinion regarding how long claimant could stand and walk in an eight-hour workday. The ALJ fails to cite any medical records or opinions that demonstrates that these are inconsistent. It is not sufficient for the ALJ to simply pronounce they are inconsistent; to do so creates the appearance of the ALJ 'playing doctor.'").

The same can be said for the ALJ's attempt at equating an individual's normal fine and gross dexterous movements with their ability to always perform such tasks frequently. Again, such findings describe one's ability, not the *duration* one is able to perform that ability. They may be related, to be sure; but one does not necessarily follow the other so as to create the logical bridge between evidence and explanation as the ALJ implies is the case when undercutting Dr. Casper's opinions.

With all this in mind, the Court's duty here is not to resolve the conflicting opinions and ultimately decide whether Petitioner is once-and-for-all disabled as that term is used within the Social Security regulations. Rather, this Court must decide whether the ALJ's decision that Petitioner is not disabled is supported by the record. In this record, there are conflicting medical opinions, testimony, and accounts that inform the ALJ's decision on how to consider the various opinions. And while the ALJ's decision to give "little weight" Dr. Hall's and Dr. Whiteside's opinions is supported by specific and legitimate reasons for doing so, his decision to give just "some weight" to Dr. Casper's opinions is not. It may very well be the case that Petitioner is actually not disabled and that Dr. Casper's opinions are legitimately at odds with the balance of the medical record. However, such evidence is undeveloped and not before the Court. *See Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely). Until then, remand is appropriate on this issue.

**MEMORANDUM DECISION AND ORDER - 15**

### 2. Petitioner's Credibility

As the trier-of-fact, the ALJ is in the best position to make credibility determinations and, for this reason, her determinations are entitled to great weight. *See Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities). In evaluating a claimant's credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including consideration of claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, as well as claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains. *See Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider location, duration, and frequency of symptoms; factors that precipitate and aggravate those symptoms; amount and side effects of medications; and treatment measures taken by claimant to alleviate those symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186. In short, "[c]redibility decisions are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). However, to reject a claimant's testimony, the ALJ must make specific findings stating clear and convincing reasons for doing so. *See Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (citing *Reddick*, 157 F.3d at 722).

As described above, the ALJ erred in his assessment of Dr. Casper's opinions. *See supra*. Hence, the Court will not address issues surrounding Petitioner credibility in great depth, considering that the ALJ's credibility determination is necessarily tethered to the medical record. *See, e.g.*, (AR 18) (ALJ stating: "However, [Petitioner's] pain complaints are out of proportion with the objective medical evidence and her clinical presentations."). Nevertheless, the Court notes (as did the ALJ) that Petitioner's historical ability to work despite her migraine headaches

**MEMORANDUM DECISION AND ORDER - 16**

and hypertension, relatively infrequent trips to the doctor with gaps in follow-up visits, possible noncompliance with prescribed treatment, and daily activities – considered in isolation – suggest that Petitioner's statements about the intensity, persistence, and limiting effects of her claimed pain or other symptoms may be less than fully credible. *See, e.g.*, (AR 18-20) (citing (AR 228, 232-60, 261-67, 314-39, 340-52, 455-520, 556-83)). But since the ALJ's credibility determination was made in the contextual space of the ALJ having decided to give only "some weight" to Dr. Casper's opinions, the evidentiary landscape for questioning Petitioner's credibility has naturally changed. Hence, remand is also appropriate in this respect.

    3.    <u>Petitioner's RFC</u>

The ALJ determined that Petitioner retains the RFC to perform light work with certain limitations, and that her past relevant work as a teacher's aide/office manager (as well as certain other unskilled light occupations) does not require activities precluded by her RFC. *See* (AR 16-23). In explaining his analysis, the ALJ reasoned that he found Petitioner's allegations regarding her level of pain to be less than credible based on what he perceived as a lack of support in the objective record, general inconsistencies, and credibility issues. *See* (AR 16-21). Petitioner contends the ALJ erred on this point, arguing that, "[b]y refusing to give weight to Petitioner's treating physicians and by not finding the Petitioner's testimony credible, the RFC found by the ALJ did not adequately address all of Petitioner's physical and mental restrictions." Pet.'s Brief, p. 13 (Docket No. 18).[9]

Because the Court remands the ALJ's findings on Petitioner's credibility and the weighing of medical opinions, and because an RFC determination is largely dependent on those

---

[9] In claiming error with the ALJ's RFC determination, Petitioner also disputes the ALJ's conclusion that she can perform past relevant work. Therefore, the Court disagrees with Respondent's claim that Petitioner "does not challenge" the ALJ's finding that she is capable of past relevant work. *See* Resp't Brief, p. 20 (Docket No. 22).

**MEMORANDUM DECISION AND ORDER - 17**

findings, the issues raised by Petitioner regarding the ALJ's RFC determination cannot be resolved here. Therefore, in remanding the case for issues relating to Petitioner's credibility and weighing of medical opinions, the ALJ should again consider the effects of Petitioner's impairments on remand and discuss their impact, along with a renewed assessment of Petitioner's credibility and medical opinions, on the ALJ's RFC determination. The issues naturally go together and consequently must be considered together on remand. *See, e.g.*, Resp't Brief, p. 19 (Docket No. 22) (addressing Petitioner's RFC challenge: "But this argument essentially restates Petitioner's previous arguments that the ALJ erred in rejecting her testimony and opinions from Drs. Hall, Whiteside, and Casper."); Pet.'s Reply, p. 8 (Docket No. 23) ("The ALJ's decision to incorrectly analyze the weight given to the opinions of the providers and Petitioner's own testimony directly resulted in his decision to assign Petitioner with an improper RFC.").

    4. <u>Medical-Vocational Guidelines</u>

  The "Medical-Vocational Guidelines" ("Grids") provide specific conditions under which a person is classified as disabled or not disabled based on the person's exertional ability, age, education, and work experience. Petitioner argues that if she was limited to sedentary work, she would be deemed disabled under the Grids. *See* Pet.'s Brief, pp. 15-16 (Docket No. 18) (citing 20 C.F.R. pt. 404, Subpt. P, App. 2 §§ 201.12, 201.14); *see also* (AR 64) (impartial vocational expert testifying that Petitioner has no transferable skills for sedentary occupational base). However, if she was capable of a full range of light work, she would not be disabled under the Grids. *See* (AR 23) (ALJ stating: "If the claimant had the residual functional capacity to perform the full range of light work, a finding of 'not disabled' would be directed by Medical-Vocational Rule 202.14."). Therefore, the issue turns on whether Petitioner is capable of performing light work as the ALJ found, or something less. Answering that question hinges on

**MEMORANDUM DECISION AND ORDER - 18**

Petitioner's RFC which, as stated above, is dependent upon Petitioner's credibility and the weighing of medical opinions – all identified issues on remand. *See supra*. Thus, for the same reasons identified earlier and in light of the various issues on remand that may inform Petitioner's RFC, the ALJ should also consider again the Grids' possible application to Petitioner's disability claim on remand.

## IV.  CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. *See Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, the court may not substitute its own interpretation for that of the ALJ. *See Key*, 754 F.2d at 1549.

However, the reasons given by the ALJ for rejecting Dr. Casper's opinions are not properly supported, potentially affecting the ALJ's credibility determination, RFC determination, and application of the Medical-Vocational Guidelines. This case is therefore remanded for reconsideration for these reasons.

## V.  ORDER

Based on the foregoing, Petitioner's request for review is GRANTED and this matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Decision and Order. *See Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).



DATED: March 29, 2019

_____
Ronald E. Bush
Chief U.S. Magistrate Judge